## Richmond.

McINTYRE'S ADM'R AND OTHERS V. WRIGHT'S ADM'R AND OTHERS.

March 14, 1912.

Absent, Cardwell, J.

1. EVIDENCE—*Survivor of a Transaction—When Payment is the "Subject of Investigation."*—Where the *ex parte* settlement of an administration account shows the payment of a debt against the decedent's estate, and the creditor subsequently seeks to falsify the account by showing that the debt has not been paid, the fact of payment is "the subject of investigation" within the meaning of section 3346 of the Code, and if the administrator who claims to have made the payment is dead, the creditor is thereby rendered incompetent to testify on his own behalf on that subject.
2. EXECUTORS AND ADMINISTRATORS—*Ex Parte Settlements—Impeachment—Presumption.*—The *ex parte* settlement of an administration account (confirmed by the court) showing that all funds coming into the hands of the administrator have been properly accounted for, and that the disbursements are supported by proper and satisfactory vouchers, will not be overturned by showing that before the account was settled the administrator paid his individual debts by checks drawn by him as administrator of his decedent's estate. It will not be inferred that the administrator has misappropriated the funds belonging to his decedent's estate.

Appeal from a decree of the Circuit Court of Fauquier county. Decree for the complainant.   Defendants appeal.

*Reversed.*

The opinion states the case.

*R. A. McIntyre,* for the appellants.

*Keith & Richards,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

In August, 1908, appellee, as administratrix of the estate of her late husband, J. W. Wright, deceased, filed her bill in the Circuit Court of Fauquier county against his distributees, praying, amongst other things, that her accounts be settled and the estate administered under the direction of the court. She also sought to recover from the estate of her decedent (who had been the administrator of her brother, John H. Orrison) $1,035.41, her distributive share in that estate, which she alleged had never been paid. There was exhibited with the bill a final settlement of the account of J. W. Wright, as administrator of Orrison, taken before the commissioner of accounts of Loudoun county July 8, 1904, which was examined by the circuit court of that county and confirmed and ordered to be recorded October 15, 1904. J. W. Wright died June 7, 1908, and shortly thereafter this suit was brought.

The bill waived an answer under oath, but the defendants averred in their answer that the fund had been fully and properly accounted for, and they relied on the confirmed commissioner's report as *prima facie* evidence of that fact.

The statute on the subject, Va. Code 1904, sec. 2699, declares that "The report, to the extent to which it may be so confirmed, shall be taken to be correct, except so far as the same may, in a suit, in proper time, be surcharged or falsified." See also *Leavell* v. *Smith*, 99 Va. 374, 38 S. E. 202, and authorities cited.

The circuit court, upon the pleadings and evidence, passed the decree complained of, establishing plaintiff's demand as a debt against J. W. Wright's estate, and from that decree the defendants appealed.

The first assignment of error involves the action of the court in admitting the testimony of the plaintiff, Loretta Wright, over the objection of the defendants. The competency of Mrs. Wright as a witness turns upon the question whether payment of a debt constitutes a *"transaction"* in contemplation of Va. Code 1904, sec. 3346.

In 8 Words & Phrases, 7062, discussing the word "transaction," it is said: "It is a broader term than 'contract,' for, while every contract is a transaction, every transaction is not a contract. But the courts have interpreted the term as the justice of each

case seemed to demand, rather than by any abstract definition, as will be seen by the decided cases. The execution of a note by a deceased person, or the delivery of a letter or of property, is such a transaction with the deceased as to render the adverse party incompetent to testify to the same, under the statute. The word 'transaction' means the doing or performing any business; the management of an affair." *Cunningham's Adm'r* v. *Speagle,* 106 Ky. 278, 50 S. W. 244.

It would seem that this case plainly falls within the mischief intended to be prevented by our statute, if not within its express terms, in denying to the survivor the right to testify. Its declared purpose is, "Where one of the original parties to the contract or other transaction which is the subject of the investigation is incapable of testifying, by reason of death," etc., to exclude the testimony of the adverse party; and in this instance all the conditions contemplated by the statute are present. The parties to the subject under investigation—namely, whether J. W. Wright had paid to Loretta Wright her distributive share in her brother's estate—are the husband and wife, and the former is dead. The fact that the payment had been made was, as we have seen, *prima facie* established by the confirmed report of the commissioner of accounts. And it is sought to overcome that presumption chiefly by the testimony of the wife. Her deposition, it is true, was negative in its character—that is to say, that the debt had not been paid; nevertheless, if her evidence is to be admitted, we throw down the bars in all investigations involving the question of payment between the estate of a decedent and a living party, and render the latter a competent witness to defeat or sustain the fact of payment, according to his interest, which, in all such instances, would nullify the statute.

Payment, generally speaking, arises out of and is a vital part of a pre-existing contract; and, whenever the fact of payment is "the subject of the investigation," and one of the parties is dead, and the adverse party is called to testify in his own behalf, the statute applies, and renders him an incompetent witness.

We are, therefore, of opinion that the circuit court erred in admitting the testimony of Mrs. Wright.

Other witnesses testified that in the year 1901, three years

before Wright's final account was settled, he paid individual debts with checks drawn by him as administrator of Orrison, amounting in the aggregate to over $1,000. From that circumstance the inference is attempted to be drawn that Wright was guilty of a mis-appropriation of his wife's funds.

It is not permissible for us to assume that a commissioner of accounts would treat such checks as "proper and satisfactory vouchers," showing that "all funds coming into his (the administrator's) hands had been properly accounted for," or that an intelligent court would have confirmed a report based upon such vouchers. The admissible evidence is not sufficient to surcharge and falsify the account, and it must be taken as correct.

For these reasons the decree of the circuit court will be reversed, and the case remanded for further proceedings.

*Reversed.*